Lawrence F. Daly
Elena Zlatnik
GARLINGTON, LOHN & ROBINSON, PLLP
 199 W Pine Street • PO Box 7909
Missoula, MT 59807-7909
(406) 523-2500
(406) 523-2595 - Fax
lfdaly@garlington.com
ejzlatnik@garlington.com

Billy M. Donley (admitted *pro hac vice*)
David R. Jarrett (admitted *pro hac vice*)
BAKER & HOSTETLER LLP
1000 Louisiana, Suite 2000
Houston, TX  77002
(713) 751-1600
(713) 751-1717 - Fax
bdonley@bakerlaw.com
djarrett@bakerlaw.com

Attorneys for Defendant Nissan Diesel America, Inc.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | | |
|---|---|---|
| PIONEER DRIVE, LLC, a Montana limited liability company, | | Case No. CV 08-115-M-DWM |
| Plaintiff, vs. | | |
| NISSAN DIESEL AMERICA, INC., a Texas corporation, | | Defendant's Response and Memorandum in Opposition to Plaintiff's Motion For Discovery Sanctions (Obstruction of Deposition) |
| Defendant | | |

Pursuant to Local Rule 7.1(d)(1)(B), Defendant Nissan Diesel America, Inc. ("NDA") files this Response and Memorandum in Opposition to Plaintiff's Motion for Discovery Sanctions (Obstruction of Deposition), and would respectfully show the Court as follows:

## I.     SUMMARY

In its motion, Plaintiff Pioneer Drive, LLC ("Pioneer") seeks to persuade this Court that Pioneer's legal counsel—rather than an independent, certified videographer—is the appropriate individual to have videotaped the depositions of NDA employees. Pioneer's attempt to dispense with using an independent videographer and to use its own counsel to videotape depositions raises what appears to be an issue of first impression in the District of Montana and the Ninth Circuit.

As shown below, ample legal authority supports the need and requirement for a disinterested professional videographer.  The rules governing the taking of depositions incorporate the concept that depositions are to be recorded by an individual not having an interest in, or connection to, the lawsuit, so as to ensure the accuracy and authenticity of the recording of the deposition.  And Pioneer's argument is not credible that having one of its attorneys operate video equipment results in a cost savings.  Undoubtedly, the costs incurred for air travel, lodging, and billable time associated with having an attorney perform the videographer

services exceeds the ordinary and reasonable cost of hiring a local independent professional videographer.  Finally, NDA did not object in bad faith and did not impede, delay, or frustrate the fair examination of deponents in this case in violation of Rule 30(d)(2).  All of the noticed depositions proceeded on their scheduled days and would have occurred had Pioneer chosen to proceed with the stenographer only.  Further, the costs associated with videotaping depositions are taxable to the prevailing party. As such, Pioneer's request for reimbursement of these costs should not serve as grounds for sanctions.

## II.     FACTUAL BACKGROUND

On July 6, 2009, Pioneer served deposition notices on NDA to take the deposition of Masaru Iwamura, Larry Schultz, Dayle Wetherell, and Dave Trussell. (Declaration of David Jarrett in Support of Defendant's Response and Memorandum in Opposition to Plaintiff's Motion for Discovery Sanctions (Obstruction of Deposition) ("Jarrett Decl.") ¶ 2, Ex. 1 (Deposition Notices)).  On July 30, 2009, Pioneer served a deposition notice to take the Rule 30(b)(6) deposition of NDA's corporate representative.  *Id*.  While these deposition notices do indicate they would be recorded by "video and by court reporter stenographically," the notices failed to disclose that the videotaping would be conducted by Pioneer's own counsel.  *Id.*

NDA's practice in the five prior and five subsequent depositions taken in

3

this case had been to use an independent, certified videographer.  (Jarrett Decl. ¶¶ 5-6.)  There were no prior discussions with Pioneer's counsel as to how Pioneer intended to conduct the videotaping of the depositions or that Pioneer's counsel planned not just to deviate from the customary practice but to have its trial counsel serve as the videographer.  (Jarrett Decl. ¶ 7.)  Based on the legitimate and reasonable assumption that the videotaping would be taken by an independent videographer, counsel for NDA had no reason to believe otherwise prior to the commencement of Pioneer's depositions.  (Jarrett Decl. ¶ 7.)

Had Pioneer communicated to NDA its intent not to use an independent videographer, NDA could have worked with Pioneer to develop adequate safeguards to ensure how the recording would take place and ensure the quality, integrity, and preservation of the video.  (Jarrett Decl. ¶ 11.)  If NDA and Pioneer could not agree on the safeguards, then NDA would have had the opportunity to seek a protective order from the Court.  Because NDA never had that opportunity, it could not have known to take any protective measures.  (Jarrett Decl. ¶ 11.)

On the morning of August 24, 2009, Mr. Steven Liday and Mr. John Neupert arrived at the offices of Baker & Hostetler for the deposition of Mr. Masaru Iwamura.  NDA's counsel observed that Mr. Liday had what appeared to be a Sony mini-cam mounted on a small tripod next to his computer.  (Jarrett Decl. ¶ 8.)  Mr. Liday's mini-cam was set up in an unconventional position with the camera at a 25

4

to 30 degree angle to the left of the witness.  (Jarrett Decl. ¶ 9.)  There was no indication that Mr. Liday's mini-cam would or could be used in conjunction with microphones that the witness and appearing counsel used to make a clear preservation of the audio.  (Jarrett Decl. ¶ 9.)  Also, the lighting conditions were less than adequate, as reflective in the fact that the independent videographer used auxiliary lighting.  (Jarrett Decl. ¶ 10.)

As NDA's counsel prepared to present the first witness, Pioneer's counsel said nothing about the mini-cam.  (Jarrett Decl. ¶ 13.)  NDA's counsel then initiated an off-the-record discussion with Mr. John Neupert.  *Id.*  At no point did Pioneer's counsel offer any assurances regarding how the recording would occur, the process and procedure of the videotaping, and how Pioneer intended to safeguard the recording or ensure its integrity.  (Jarrett Decl. ¶ 12.)

With no agreed safeguards or protocol in place for creating an accurate and trustworthy recording, NDA stood on its objection that Pioneer needed to use an independent professional videographer if it desired to have a video recording of the depositions for use at trial.  (Jarrett Decl. ¶ 13.)  At no point did NDA's counsel require, or even suggest, that Pioneer be prohibited from proceeding with the depositions through the use of the stenographic reporter.  (Jarrett Decl. ¶ 14.)  Pioneer was informed that an independent videographer could arrive in less than

one hour, and Pioneer then obtained the services of a professional videographer who arrived about forty-five minutes later.  *Id.*

### III.   ARGUMENT AND AUTHORITIES

### A.   Legal Authority Requires a Disinterested Professional Videographer to Videotape Depositions.

Pioneer's Motion for Sanctions raised an issue of first impression.  Pioneer cited no authority from the District of Montana or the Ninth Circuit addressing whether a party's own attorney may videotape depositions of opposing witnesses, and NDA is not aware of any such authority.  Pioneer's motion also lacks any legal authority to support its argument that sanctions are proper against a party who objected to counsel's self-directed videotaping of depositions.

There is, however, ample legal authority supporting the need for and requirement of a disinterested professional videographer.  While NDA readily concedes that using non-stenographic means to record depositions is now a routine practice, using a party's own attorney to videotape a deposition is far from routine or favored.   The lack of any on-point case provides anecdotal support for NDA's position:  Common sense and the customary practice dictate that it is not proper for a party's attorney to videotape a deposition, if the attorney expects to use the videotape at trial.

6

NDA could not locate a single case from any jurisdiction in which a party was sanctioned for having objected to its opponent's attorney serving as the videographer.[1] And Pioneer's cases do not support sanctions either. But courts have held that the recording equipment should be operated by a qualified, independent, and disinterested videographer. *See In re Daniels,* 69 F.R.D. 579, 582 (N.D. Ga. 1975) (court ordered use of certified court reporter with videotape capability); *see also Jarosiewicz v. Conlisk,* 60 F.R.D. 121, 126 (N.D.Ill. 1973) (court ordered use of independent operator of video equipment to preclude parties' attorneys from acting as videographers); *see also Wescott v. Neeman,* 55 F.R.D.

---

[1] NDA found one reported case within this Circuit addressing videotaping. In *Champagne v. Hygrade Food Products,* 79 F.R.D. 671 (E.D. Wash. 1978), the court granted the plaintiff's motion to electronically record depositions subject to ten specific procedural safeguards and conditions. Among these conditions were the use of multiple recorders and that the plaintiff supply at least one person to operate and monitor the recording equipment during the entire deposition. *Id.* at 673-74. The opinion does not state whether recording equipment would be operated by an attorney but the court did state the individual recording the depositions was prohibited from participating in the actual interrogation process. *Id.* In any event, defendant had both adequate notice of plaintiff's intent to make recordings and had an opportunity to object to the safeguards proposed by plaintiff related to the recording of depositions. But in an unreported district court case within the Ninth Circuit, *Reyes v. City of Glendale*, 2009 WL 2579614 (C.D. Cal., August 19, 2009), the court granted a motion to exclude videotaped deposition testimony where, during at least one deposition, plaintiff's counsel videotaped the deposition. *Id.* at *10-11. The court concluded that it would not permit the videotape to be presented at trial unless it could be shown that the deposition was videotaped in its entirety and met the requirements of Rule 30. *Id.* The *Glendale* case is attached to Jarrett Decl. ¶ 4, (Unpublished Opinions and Secondary Authorities) pp. 14-27.

257, 258 (D. Neb. 1972) (court ordered use of independent operator of video

equipment).  As one court explained:

> The independence and integrity of the court reporter has been a
> traditional protection of the integrity of the record produced.  To expect
> attorneys in hotly contested litigation to undertake, in addition to the
> active pursuit of their clients' interests, the technical and mechanical
> responsibilities of operating recording equipment of any complexity,
> would be undesirable and diminish the accuracy, if not the integrity, of
> the recording and, therefore, an independent operator of recording
> equipment should provide further assurance of the integrity of the
> recording and relieve the attorneys completely, to represent their
> clients.

*Kallen v. Nexus Corp.,* 54 F.R.D. 610, 613-14 (N.D. Ill. 1972).

While the cases cited above pre-date the 1993 amendment to Federal Rule of

Civil Procedure 30, allowing for either party to notice a video deposition without

stipulation or court approval, the amendment never abrogated the need to

safeguard the integrity of the recording.  Courts still require that a "party must

provide adversaries with notice of intention to use non-stenographic methods to

record a deposition, and an independent party must make the recording." *Carvalho*

*v. NY Dept. of Taxation & Fin.,* 21 Fed. Appx. 77, 79 (2nd Cir. 2001) (emphasis

added).[2]

The facts in this case are similar to what faced a Louisiana court of appeals.

---

[2]  *Carvalho* is attached to Jarrett Decl. ¶ 4, (Unpublished Opinions and
Secondary Authorities) pp. 27-30.

In *Brigsten v. Southern Baptist Hospital,* 690 So.2d 810 (1996), when the deposition was to commence, the defendants discovered that the plaintiff's attorney intended to have a staff member videotape the deposition.  A court reporter was also present as required under Louisiana law.  The defendants objected to the taking of the videotape deposition by an employee of the plaintiff's counsel, pointing out "that audio problems, picture quality and angles of a non-professional videographer could very well affect the objectivity of the deposition."  *Id.* at 811.  Defendants pointed to their "[f]ear also of manipulation of the tape or non-objective editing of the video deposition could impair the 'accurate and trustworthy' taking and use of the videotape of the deposition."  *Id.*  The Louisiana Fourth Circuit Court of Appeals held that:

> …[A]ccuracy and trustworthiness of the videotaped deposition must be provided for.  In any non-videotaped deposition, a certified steonographic reporter is required in order to protect the objectivity and validity as well as the accuracy and trustworthiness of the transcribed deposition.  It would be inconsistent to provide for a certified professional reporter to be used when transcribing and not to require that a professional videographer be used in a videotaped deposition.

*Id.*  The same holds true with every deposition taken anywhere.  The standard practice and protocol for videotaping depositions calls for an independent and disinterested technician who uses proper equipment, such as microphones, sufficient lighting, and the proper placement of equipment and persons.  *See* 23 Am. Jur. Trials 95 *The Use of Videotape in Trial Preparation and Discovery* § 44-

65 (2009).  As the commentator explained:

> In the case of videotape depositions, the necessary arrangements
> include ensuring the availability of videotape facilities, and engaging a
> trained person to operate the equipment.  As a general rule, the
> recording equipment should be operated by an independent and
> disinterested technician in order to prevent possible partisan abuses, in
> which case the attorney should arrange for the presence of an
> independent operator and should pay his fee, the situation not being
> unlike the one in which the attorney giving notice of deposition is
> ordinarily required to arrange for the presence of a qualified
> stenographic reporter, and to pay the latter's fee.

*Id.* at § 55.

Mr. Liday is not an independent and disinterested technician.  He has a
vested interest in this litigation on behalf of his client, Pioneer, and his operation of
a video camera without proper lighting, microphones, or the appropriate placement
of camera equipment, to capture recordings of NDA employee depositions, lacked
any safeguards to prevent partisan abuses in the recording process or to establish
trustworthy recordings.

    B.    <u>NDA Has a Right to Protect the Integrity of the Video Recording</u>.

Pioneer never informed NDA of its intent to depart from standard protocol,
but instead simply appeared at the deposition with a video camera.  (Jarrett Decl., ¶
8.) This was an unannounced departure from recognized protocol and the parties'
prior deposition practice.[3]  (Jarrett Decl. ¶ 7.)  Whether it be audiotape or

_____

[3] Recommended practice is to identify the individual who will be making the
video recording of the deposition.  *See* Bender's Federal Practice Forms, Volume

10

videotape, courts have repeatedly held that an independent operator of the

recording device should be used.  *See e.g. Bogan v. N.W. Mut. Life Ins. Co.,* 145

F.R.D. 642 (S.D.N.Y. 1993) (noting that attorneys handling the recordation raises

problems under Rule 28(c)); *Kallen,* 54 F.R.D. at 613-14 (operator independence

protects the integrity of the record produced).  Even the primary case relied upon

by Pioneer, *Ott v. Stipe,* 169 F.R.D. 380, 381 (E.D.Okla. 1996), is reasonably

interpreted to support NDA's position and points out that "counsel's operation of

the video camera is not the preferred method during a video deposition." [4] *Id.*

More importantly, the court in *Ott* acknowledged that its decision to permit the

---

6, Form No. 30:22, *Notice of Taking Oral Deposition—Recorded by Video*; and
Form No. 30:23, *Notice of Additional Recording of Deposition* (2009) attached to
Jarrett Decl., ¶ 4, (Unpublished Opinions and Secondary Authorities) pp. 12-13.

   [4]  Pioneer also relies on *Marlboro Products Corporation v. North American
Philips Corporation*, 55 F.R.D. 487 (S.D.N.Y. 1972).  In *Marlboro*, the court
found that employing an independent operator for the purpose of making an audio
tape recording of the deposition impaired the purposes of economy.  However, the
court required that the parties work together to fashion an agreed order regarding
adequate safeguards.  As discussed *supra* in the instant case, NDA lacked an
advance opportunity to confer with Pioneer regarding agreeable safeguards
because Pioneer never disclosed its intent to have Mr. Liday serve as the
videographer.  Similarly, in *Rice's Toyota World, Inc. v. Southeast Toyota
Distributors, Inc.,* 114 F.R.D. 647 (M.D.N.C. 1987) the parties submitted a
detailed order to the court providing safeguards that would govern the video
depositions.  In addition to the cases requiring safeguards governing the recording
of depositions, Pioneer also cites *Hearn v. Wilkins Township, Pennsylvania,* 2007
WL 2155573 (W.D.Pa. July 25, 2007) an unreported case from the Western
District of Pennsylvania.  The *Hearn* case deals with the exclusion of a video from
evidence and provides no actual analysis regarding whether a party's counsel can
operate recording equipment without safeguards.

disfavored practice of allowing counsel to videotape might be different if counsel's operation of the recording equipment was questioned, as NDA has done in this case. *Id.* at 381-82.

Here, NDA's counsel objected at the time of deposition because Pioneer did not provide notice that it intended to deviate from customary deposition practice by having Mr. Liday serve as attorney and as videographer. (Jarrett Decl. ¶ 3; Depo. Masaru Iwamura vol. 1 at 5-10.)  In addition to the lack of proper notice, NDA had legitimate concerns about Mr. Liday acting as videographer when nothing about his camera setup indicated that either the witness or counsel would have microphones, and there were questions about whether the lighting was sufficient and how the video would appear to a jury since the mini-cam was located at a 25 to 30 degree angle to the left of the witness.  (Jarrett Decl. ¶¶ 9-10, 12.)

NDA's objection and concerns were justified in order to protect the accuracy and integrity of the record, and more importantly, the objection did not "impede, delay, or frustrate the fair examination of the deponent" in violation of Rule 30(d)(2).  In fact, all depositions proceeded and at no point did NDA's counsel object to proceeding with these depositions before a stenographic reporter and/or an independent videographer.  (Jarrett Decl. ¶ 14; Depo. of Iwamura vol. 1 at 5-10.)

12

C.   <u>Pioneer Cannot Justify Using its Own Counsel as a Videographer</u>.

Pioneer has offered no legitimate reason for not having an independent videographer to record those depositions.  Rather, Pioneer claims that "[its] very purpose in bringing its own video recording equipment was to reduce the costs of discovery, which, over the course of this litigation, stand to be enormous." (Pioneer's Mot. 9)  While that sounds credible on the surface, Pioneer's argument cannot withstand scrutiny.  Either Mr. Liday was to serve as the videographer with no other duties or he was to serve as videographer and simultaneously assist Mr. Neupert in Pioneer's examination.  If Mr. Liday's sole purpose for being in attendance was to videotape the depositions, then he would have been the most expensive videographer Pioneer could have obtained, taking into account his billable time, air travel from Portland, Oregon to Houston, Texas and back, along with his weekly lodging.  Therefore, Pioneer's argument that it was a cost savings to have Mr. Liday act as the operator of video equipment simply is not credible.

But if Mr. Liday was in attendance to serve as videographer and co-counsel to Pioneer (which is what NDA contends is the truth, *see* Jarrett Decl. ¶ 15), then Mr. Liday should not be permitted to serve as videographer and actively pursue Pioneer's interests as counsel during depositions.  *Kallen* 54 F.R.D. at 613-14.  It is not only burdensome but undesirable in contested litigation for an attorney, such as Mr. Liday, even to attempt to take responsibility for operating the equipment

13

necessary to video depositions. *Jarosiewicz,* 60 F.R.D. at 126. To serve as a videographer, Mr. Liday needs to be completely relieved of his responsibility to represent his client. *Kallen,* 54 F.R.D. at 613-14. He should not be allowed to do both.

     D.    <u>Sanctions Are Inappropriate When Videotaping Can Be Recouped As Costs</u>.

Numerous courts have held that the costs associated with videotaping a deposition are taxable costs. *See Williams v. Rockwell Intl. Corp.,* 116 F.3d 488, 1997 WL 306 456 at *3 (table) (9th Cir. 1997), (affirming district court's award of costs for videotaping depositions to the prevailing party)[5]; *Cargill Inc. v. Progressive Dairy Solutions, Inc.,* 2008 WL 5135826, at *5 (E.D. Cal. 2008) (holding that prevailing party was entitled to recover costs of video depositions and deposition transcripts)[6]; *See Morrison v. Reichhold Chems., Inc.* 97 F.3d 460, 465 (11th Cir. 1996) (per curiam) (holding that when party notices deposition to be taken both stenographically and by video, and there is no contemporaneous objection, both costs are taxable); *Little v. Mitsubishi Motors N. Am., Inc.,* 514 F.3d 699, 701-02 (7th Cir. 2008) (holding that district court was authorized to award prevailing party costs of both video-recording and stenographically

---

    [5]  *Williams* is attached to Jarrett Decl. ¶ 4, (Unpublished Opinions and Secondary Authorities) pp. 31-36.
    [6]  *Cargill* is attached to Jarrett Decl. ¶ 4, (Unpublished Opinions and Secondary Authorities) pp. 37-44.

transcribing the same deposition); *Tilton v. Capital Cities/ABC, Inc.,* 115 F.3d

1471, 1478 (10th Cir. 1997) (affirming district court's taxation of costs for

preparation and transcription of videotaped depositions); *Garonzik v. Whitman*

*Diner,* 910 F. Supp. 167, 170-72 (D.N.J. 1995) (holding costs of video deposition

and transcription taxable because transcripts are mandated by the rules); *Freedman*

*v. Natl. R.R. Passenger Corp.,* 1994 WL 448631 at **1-2 (D.Mass. 1994) (taxing

both video deposition and transcription fees)[7]; *Weseloh-Hurtig v. Hepker,* 152

F.R.D. 198, 201 (D.Kan 1993) (taxing both video and stenographic recording

because party did not contemporaneously object to court order requiring both

methods be used).  Because the costs of videotaping depositions appear to be

taxable costs to the prevailing party, Pioneer's attempt to recoup video costs at this

juncture is improper.

## IV.   CONCLUSION

Pioneer's motion implies that its attempt to conduct an attorney-directed

videotaping of opposing witnesses is so commonplace that NDA should be

sanctioned for having objected.   NDA is unaware of a single case in the District of

Montana or the Ninth Circuit holding that an attorney-directed videotaping of a

deposition is appropriate.  Also, no case cited by Pioneer held that a party should

---

[7]  *Freedman* is attached to Jarrett Decl. ¶ 4, (Unpublished Opinions and
Secondary Authorities) pp. 45-47.

be sanctioned for objecting to opposing counsel videotaping a deposition.  Thus,

Nissan Diesel America, Inc. respectfully requests that Pioneer's motion for

sanctions [Dkt. 88] be denied for the reasons stated herein.

DATED this 19th day of October, 2009.

_____/s/ Elena J. Zlatnik_____
Elena J. Zlatnik
An Attorney for Nissan Diesel America, Inc.

16

CERTIFICATE OF COMPLIANCE

The undersigned certifies that the brief in support of Nissan Diesel America, Inc.'s Response and Memorandum in Opposition to Motion for Sanctions complies with the word limits imposed by Local Rule 7.1.  The brief has 3,507 words, excluding the title of document, caption, certificate of service and certificate of compliance.  The undersigned has relied on the word count of the word-processing system used to prepare this brief.

/s/ Elena J. Zlatnik
Elena J. Zlatnik
An Attorney for Nissan Diesel America, Inc.

CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2009. a copy of the foregoing document was served on the following persons by the following means:

| 1, 2, 3 | CM/ECF |
| _____ | Hand Delivery |
| _____ | Mail |
| _____ | Overnight Delivery Service |
| _____ | Fax |
| _____ | E-Mail |

1.   T. K. Botsford
     Botsford Law Office
     211 N. Higgins Avenue, Suite M3
     P. O. Box 8213
     Missoula, MT  59807
          Attorneys for Plaintiff

2.   John R. Neupert, P.C.
     Steven G. Liday
     Miller Nash LLP
     3400 U.S. Bancorp Tower
     111 S.W. Fifth Avenue
     Portland, OR  97204-3699
          Attorneys for Plaintiff

17

3.      Randy J. Cox
        Thomas J. Leonard
        Boone Karlberg, P.C.
        201 West Main Street, Suite 300
        Missoula, MT 59807-9199
                Attorneys for Defendant
                Nissan Diesel Motor Company, Ltd.


                        /s/ Elena J. Zlatnik
                        Elena J. Zlatnik
                An Attorney for Nissan Diesel America, Inc.